# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZLYNNE HOARD, *individually and on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE, N.A.,<br><br>Defendant. | Case No. 24-cv-1133-MMA-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 10] |

On July 19, 2024, Defendant Capital One, N.A. filed a motion to dismiss Plaintiff Azlynne Hoard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc.

1 No. 10.  Plaintiff filed a response in opposition on August 12, 2024, and Defendant filed
2 a reply on August 19, 2024.  Doc Nos. 11, 12.  The Court found the matter suitable for
3 determination on the papers and without oral argument pursuant to Federal Rule of Civil
4 Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 13.  For the reasons below,
5 the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

### I. B<sub>ACKGROUND</sub>[1]

Defendant is a national credit card issuer.  Doc No. 1-3 ("Compl.") ¶ 1.  Plaintiff holds a Capital One VentureOne card—a credit card issued by Defendant.  *Id.* ¶ 9. Plaintiff alleges that she and individuals who hold Capital One credit cards agree to, and are therefore subject to, a Capital One Credit Card Agreement ("Card Agreement").  *Id.* ¶¶ 17–18.  According to Plaintiff, the Card Agreement is a contract uniform across all Defendant's branded credit cards that sets forth the terms and conditions for credit card use between the cardholder and issuer.  *Id.*  Relevant to this action, these include terms and conditions for "Cash Advances." *Id.* ¶¶ 18–19.  The Card Agreement defines a Cash Advance as "a loan in cash or things we consider cash equivalents, including wire transfers, travelers' checks, money orders, foreign currency, lottery tickets, gaming chips, and wagers."  Compl. ¶ 18; *see also* Doc. No. 1-3 at 18–25[2] ("Compl. Ex. A").  A Cash Advance incurs a fee of "[e]ither $5 or 5% of the amount of each cash advance, whichever is greater."  Compl. ¶ 18; Compl. Ex. A at 1.  Defendant likewise "begin[s] charging interest on cash advances and transfers on the transaction date," whereas interest on new purchases is not charged "provided [the cardholder] ha[s] paid [their] previous balance in full by the due date each month."  Compl. Ex. A at 1.

Generally, Plaintiff alleges that Defendant improperly charged her and other credit cardholders "Cash Advance Fees" and immediately accrued interest on transactions

---

[1] Because this matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations set forth in the Complaint and draw all inferences in the light most favorable to the nonmovant.  *See Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).
[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

without proper notice or disclosure that these transactions would qualify as Cash Advances. *See* Compl. ¶¶ 4, 8. She contends that Defendant "keeps secret" what transactions qualify as "cash equivalents" for the purpose of categorizing transactions as Cash Advances. *Id.* ¶ 20. According to Plaintiff, Defendant routinely charges Cash Advance fees on transactions that are not "loans in cash" or reasonably understood as "cash equivalents." *Id.* ¶ 25.

For example, Plaintiff alleges that although Defendant does not specifically define Cash Advances as including "person to person money transfer[s]," it nevertheless assesses a Cash Advance fee for person to person transactions or payments made using "peer-to-peer mobile applications." *Id.* ¶¶ 28, 32–38. Plaintiff offers that her February 25, 2024, $130 Venmo payment for a beauty treatment was assessed a Cash Advance fee. *Id.* ¶ 39. Plaintiff maintains that had she known that Defendant would categorize the transaction as such, she would have utilized a different payment method. *Id.* at ¶ 40.

Consequently, Plaintiff brings two claims against Defendant: (1) breach of contract including breach of the covenant of good faith and fair dealing; and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

## II. LEGAL STANDARD

A Rule 12(b)(6)[3] motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

1  truth of all factual allegations and must construe them in the light most favorable to the
2  nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).
3  Legal conclusions need not be taken as true merely because they are cast in the form of
4  factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987);
5  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory
6  allegations of law and unwarranted inferences are not sufficient to defeat a motion to
7  dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). In
8  determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look
9  beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908
10 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

    When a motion to dismiss is granted, the court must decide whether to grant leave
to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to
amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d
655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when
permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine
Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to
amend is not an abuse of discretion where the pleadings before the court demonstrate that
further amendment would be futile.").

### III. REQUESTS FOR JUDICIAL NOTICE

    As an initial matter, Defendant requests the Court take judicial notice of six
exhibits: (A) February 27, 2018 Federal Trade Commission "Consumer Alert"; (B) a
Federal Reserve article; (C) October 2019 Federal Deposit Insurance Commission
Consumer News bulletin; (D and E) September 2021 and October 2023 Consumer
Financial Protection Bureau reports; and (F) Defendant's website page entitled "What is a
cash advance on a credit card?" Doc. No. 10-1. Plaintiff opposes the request on the
grounds that the documents are not relevant to Plaintiff's claims or this motion, and
specifically that subject webpage (Exhibit F) lacks authenticity. Doc. No 11-1.

|   |   |
|---|---|
| 1 | While review of a motion to dismiss is generally limited to the contents of a |
| 2 | complaint, the Court may consider certain materials, including matters of judicial notice, |
| 3 | without converting the motion to dismiss into a motion for summary judgment. *See* |
| 4 | *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Pursuant to Federal Rule of |
| 5 | Evidence 201, a judicially noticeable fact is one that is not subject to reasonable dispute |
| 6 | because it is generally known within the jurisdiction or can be accurately and readily |
| 7 | determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. |
| 8 | 201(b). This can include information on government websites. *See Daniels-Hall v. Nat'l* |
| 9 | *Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Gallagher v. Philipps*, 563 F. Supp. |
| 10 | 3d 1048, 1070–71 (S.D. Cal. 2021). While Plaintiff challenges the relevancy of Exhibits |
| 11 | A–E, she does not appear to argue that they do not faithfully represent the content of |
| 12 | federal government websites. Therefore, the Court **GRANTS** Defendant's request for |
| 13 | judicial notice as to Exhibits A–E. |
| 14 | Regarding Exhibit F, many courts have expressed doubt as to whether a party's |
| 15 | own website can be considered a source whose accuracy cannot be reasonably |
| 16 | questioned. *See Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1145 |
| 17 | (S.D. Cal. 2022); *cf. Gallagher*, 563 F. Supp. 3d at 1071 (explaining that a court may |
| 18 | "take notice of undisputed information on a private entity's website"). "Even if a court |
| 19 | judicially notices a party's website, the court is simply taking as true that the website |
| 20 | exists and makes certain representations about the company to the public." *Genasys*, 638 |
| 21 | F. Supp. 3d at 1146 (internal citation and quotation marks omitted). Here, Plaintiff |
| 22 | questions Exhibit F's authenticity on the basis that the link provided to access the |
| 23 | webpage leads to an error page. Doc. No. 11-1 at 5. However, the Court was able to |
| 24 | access the website page using the link offered in Marianne Spencer's declaration, and the |
| 25 | webpage appears to be identical to that offered as Exhibit F. Doc. No. 10-2 ¶ 7. Plaintiff |
| 26 | offers no other argument undermining the authenticity of this document. Therefore, the |
| 27 | Court finds that the authenticity of this website page is not reasonably in question. |
| 28 | Accordingly, the Court **GRANTS** Defendant's request as to Exhibit F. |

1  Regardless, the Court will not rely on these exhibits to the extent they are
2  irrelevant to issues presented in the present motion or are offered to "short-circuit the
3  resolution of a well-pleaded claim." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d
4  809, 830 (N.D. Cal. 2019).
5  ///

## IV. DISCUSSION

Defendant moves to dismiss both of Plaintiff's causes of action. As to Plaintiff's breach of contract claim, Defendant argues that it did not breach the parties' contract or breach the implied covenant of good faith and fair dealing. Doc. No. 10 at 13–19. As to Plaintiff's UCL claim, Defendant argues that she fails to satisfy both Rule 9(b) and other relevant pleading requirements. *Id.* at 19–25. The Court addresses each in turn.

### A. Breach of Contract

As a preliminary matter, the parties appear to agree that Virginia law governs Plaintiff's contract claim. Plaintiff did not specifically plead these claims under Virginia law, but the parties, in briefing, cite Virginia law as controlling the Card Agreement and the contract claims arising from it. *See* Doc. No. 10 at 14; Doc. No. 11 at 11. For the purpose of resolving the instant motion to dismiss the Court assumes, without finding, that Virginia law applies to the contract claims.

Under Virginia law, a breach of the implied covenant of good faith and fair dealing is not recognized as a cause of action separate from breach of contract. *See Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *10 (S.D. Cal. Apr. 12, 2018) (interpreting a contract under Virginia law). Thus, a party must plead a breach of the implied covenant within a breach of contract claim. *Id.* The Court, however, addresses the two asserted breaches separately.

#### 1. Express Terms

To plead a breach of contract under Virginia Law, a Plaintiff must allege that: (1) Defendant had a legally enforceable obligation to Plaintiff; (2) Defendant violated or

breached that obligation; and (3) the breach or violation caused injury or damage to Plaintiff. *Filak v. George*, 594 S.E. 2d 610, 619 (Va. 2004).

First, Plaintiff alleges that under the Card Agreement, Defendant—though it may assess fees and apply immediately accruing interest for Cash Advances—has an obligation to cardholders not to assess such fees for transactions falling outside of the contractual definition of a Cash Advance. Compl. ¶¶ 1–3, 14–15, 19. Therefore, the Court finds that Plaintiff adequately pleads the first element of a Virginia breach of contract claim.

Second, Plaintiff alleges that Defendant has violated or breached this obligation by both assessing a Cash Advance fee and applying immediately accruing interest on a transaction type—person to person transactions made through mobile payment applications—that cannot be categorized as a Cash Advance under the Card Agreement's terms. *Id.* ¶¶ 19–21, 25–28, 39. Because she has alleged facts that plausibly amount to Defendant's breach of a contract obligation, Plaintiff sufficiently pleads the second element to a breach of contract claim.

Defendant, however, argues that the phrase "things *we consider* cash equivalents . . . ," (Compl. Ex. A at 6) (emphasis added), expressly provides it "discretion to determine what types of transactions are cash equivalents and therefore may be treated as cash advances" based upon its own criteria. *See* Doc. No. 12 at 6–8. To Defendant's understanding, the definition apparently requires no objective similarity to actual cash for a transaction to be categorized as such—it is purely up to Defendant's discretion. *Id.* Therefore, Defendant argues that even under Plaintiff's facts, it was merely exercising its contractual rights to define "cash equivalents" as it pleases.

However, the Court must accept Plaintiff's factual allegations as true, and Plaintiff alleges that the proper interpretation of "cash equivalents" is not wholly subject to Defendant's discretion, but instead defined by a transaction's similarity to cash. Compl. ¶¶ 25–28. Further, Plaintiff offers several reasons that the transactions at issue are so meaningfully different from cash loans that they cannot be permissibly defined as cash

advances, such as differences in relative fungibility, financial institution-status-requirements, and industry standards which ostensibly consider such transactions to be different. Compl. ¶¶ 25–26, 32–38. According to Plaintiff, the Card Agreement "is ambiguous as to the meaning of the term 'cash equivalents.'" *Id.* ¶ 31.

"A breach of contract claim may not be dismissed for failure to state a claim if the contract's terms are ambiguous." *Lloyd*, 2018 WL 1757609, at *7. A contract term under Virginia law is interpreted by its plain language "taken in its ordinary signification . . . . If, when so read, the meaning is plain, the instrument must be given effect accordingly." *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984) (citing *Virginian Ry. Co. v. Avis*, 98 S.E. 638, 639 (1919) (internal quotation marks omitted)); *see also Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. Jul. 7, 2022). [A]mbiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Morrow*, 2022 WL 2526676, at *2 (quoting *Pocahontas Min. L.L.C. v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008)); *see also Amos*, 320 S.E.2d at 337. At this stage, Plaintiff's allegations plausibly demonstrate that meaning of "cash equivalents" in the Card Agreement is ambiguous. Therefore, the Court cannot dismiss this claim based upon Defendant's proffered interpretation. *See, e.g.*, *Lloyd*, 2018 WL 1757609, at *7; *Morrow*, 2022 WL 2526676, at *4.

Finally, Plaintiff alleges that she paid $130.00 for a "beauty treatment" using the peer-to-peer payment application Venmo, and that Defendant categorized this payment as a Cash Advance. Compl. ¶ 39. Because of this, Plaintiff claims she was wrongfully charged a Cash Advance fee and immediately accruing interest on the payment. *Id.* Therefore, the Court finds that Plaintiff has adequately pleaded that she was harmed by Defendant's categorizing of her payment as a Cash Advance.

Consequently, because Defendant sufficiently pleads the elements of a breach of contract claim under Virginia law, the Court **DENIES** Defendant's motion to dismiss this claim.

### 2. *Covenant of Good Faith and Fair Dealing*

Every party to a contract under Virginia law is subject to an implied covenant of good faith and fair dealing. *Enomoto v. Space Adventures, Inc.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). "In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Id.*; *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013), *clarified on den. of recons.*, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013). "[A]lthough the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Connecticut*, 156 F.3d 535, 542 (4th Cir. 1998) (emphasis in original).

First, as discussed above, Plaintiff alleges a contractual relationship between the parties. *See* Compl. ¶¶ 1–3, 14–15, 19.

Second, Plaintiff alleges that Defendant withholds the full list of transactions considered cash equivalents, and that consumers therefore have no way to assess the criteria upon which Defendant relies on in determining whether a transaction type falls under that category. Compl. ¶¶ 3–4 20–21. Plaintiff next contends that Defendant categorizes certain common transaction types, like Plaintiff's, as Cash Advances though they ostensibly share few if any objective similarities to cash or traditional cash loans. *Id.* ¶¶ 25–27. Further, Plaintiff maintains that these practices are in contravention of practices employed by other credit card issuers. *Id.* ¶ 6, 32–38. Finally, Plaintiff asserts that Defendant did not always treat these transactions as Cash Advances but recently changed its policy without alerting consumers or cardholders. *Id.* ¶ 30.

Defendant begins its analysis by stating that its categorization of peer-to-peer transactions, like Plaintiff's, as Cash Advances are merely exercises of express contractual rights, and therefore that the applied covenant is inapplicable, before

1 defending its alternative argument that, to the extent Plaintiff was alleging a breach
2 through a misuse of discretion, its actions were not arbitrary.  Doc. No. 10 at 16–17.
3       In applying the Virginia Supreme Court's decisions, courts are split on the exact interplay between the implied covenant and explicit contractual rights.  Some hold that "where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly . . . but where a party has discretion in performance, that party cannot act arbitrarily or unfairly."  *Stoney Glen*, 944 F. Supp. 2d at 466; *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *5 (E.D. Va. Aug. 14, 2019); see also *Enomoto*, 624 F. Supp. 2d 443 (reconciling the concept that "in Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights" with *Charles E. Brauer Co., Inc. v. Nationsbank of Virginia, N.A.*, 466 S.E. 2d, 382, 386 (Va. 1996)); cf. *Charles E. Brauer Co., Inc.*, 466 S.E. 2d at 386.  Others, however, take an approach that precludes even dishonest conduct from amounting to a breach of the implied covenant when a party exercises a contractual right.  *See, e.g.*, *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610 (E.D. Va. 2009) (citing *Ward's Equip. v. New Holland N. Am.*, S.E. 2d 516, 520 (Va. 1997)); *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546, at *10 (E.D. Va. Apr. 18, 2012).

      At this stage, Plaintiff is required only to plead a set of facts that raises the right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  Likewise, the Federal Rules permit "[a] party [to] state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Because she pleads a plausible claim for relief under those portions of the law that are clear—that, in essence, Defendant was arbitrary or dishonest in using its contractual discretion to categorize her transaction as a Cash Advance, Compl. ¶¶ 3–4—her pleading is sufficient at this stage.  The Court therefore **DENIES** Defendant's motion to dismiss on this basis.

///

///

B.	**California Unfair Competition Law Claim**

Next, Defendant moves to dismiss Plaintiff's UCL claim, arguing that she fails to meet the relevant pleading standards under Rule 9(b) and that she fails to plead that she lacks an adequate remedy at law. Because the UCL provides only for equitable remedies, plaintiffs bringing a UCL claim in a federal court must establish that they "lack[] an adequate remedy at law" before the court can award them the UCL's equitable relief. *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This principle applies even where a plaintiff could have brough claims for both legal and equitable remedies in state court, and whether the relief sought is restitution or an injunction. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023). A plaintiff may plead claims for equitable relief in the alternative at the pleading stage. *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 976 (N.D. Cal. 2022). However, in federal court, the "plaintiff must, at a minimum, plead that [she] lacks adequate remedies at law if [she] seeks equitable relief." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (emphasis in original); *Guzman*, 49 F.4th at 1313–15.

Plaintiff relies on *Junhan Jeong v. Nexo Fin., LLC*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022), for the proposition that *Sonner* holds limited application at the pleading stage, and that thus the Court should not apply its requirements here. Doc. No. 11 at 26. Indeed, *Junhan Jeong* does support this proposition. 2022 WL 174236, at *26–27. However, this Court finds that *Guzman v. Polaris Indus. Inc.*, decided several months after *Junhan Jeong*, resolves any question about *Sonner*'s applicability at the pleading stage in favor of application. *Guzman*, 49 F.4th at 1313; *see In re MacBook Keyboard Litig.*, 2023 WL 2095914, at *3. In *Guzman*, the Ninth Circuit held that a plaintiff may not proceed with a UCL claim if a legal remedy had once been available, even where the plaintiff failed to plead a claim under that legal cause of action and was now time barred from doing so. 49 F.4th at 1313–15. The *Guzman* court also held that *Sonner*'s holding is not limited to the specific

procedural posture that was before the court at that time. *Id.* at 1313 ("Nothing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury trial."). Consequently, though the Court recognizes that not all district courts interpreting the UCL post-*Guzman* take this approach, courts within this district have regularly applied *Sonner* at the pleading stage and dismissed UCL claims on these grounds. *See Fierro v. Cap. One, N.A.*, 656 F. Supp. 3d 1121, 1131 (S.D. Cal. 2023) (collecting cases); *Stafford v. Rite Aid Corp.*, No. 17-CV-1340 TWR (JLB), 2023 WL 2876109, at *4 (S.D. Cal. Apr. 10, 2023) (collecting cases and explaining the issue at length). Therefore, it is appropriate to determine at the pleading stage whether Plaintiff has alleged that she lacks adequate remedies at law before allowing her UCL claim to proceed.

Plaintiff makes no allegations that the legal remedies she seeks under her breach of contract claim are insufficient to make her whole for the damages alleged to have already occurred, and thus as to why restitution in required. *See* Compl. ¶¶ 63–72. Likewise, though Plaintiff claims that she "remains a Capital One credit card holder and as such may be subject to the same wrongful conduct in the future unless Capital One is enjoined[,]" she does not allege any facts as to why remedies at law are insufficient. *Id.* ¶ 71. In her opposition to Defendant's motion to dismiss, Plaintiff argues that because she is still a cardholder, and "there is every reason to believe that Plaintiff's experience may repeat itself," she lacks adequate remedy without an injunction. Doc. No. 11 at 28–29. However, these allegations are not in her complaint. Moreover, the fact that an injunction may be an available remedy does not necessarily leave it the only adequate remedy. *See, e.g.*, *Clark v. Am. Honda Motor Co., Inc.*, 528 F.Supp.3d 1108, 1121–22 (C.D. Cal. 2021). Thus, because Plaintiff does not plead that she lacks a remedy at law, the Court **GRANTS** Defendant's motion and **DISMISSES** her UCL claim.

///

///

///

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. Namely, the Court **DISMISSES** Plaintiff's UCL claim. Dismissal is with leave to amend. Should Plaintiff wish to file an amended complaint, she must do so on or before **November 18, 2024**. Defendant may then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any defendants not named and any claim not realleged in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated: October 28, 2024

HON. MICHAEL M. ANELLO
United States District Judge